IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HOWARD GREENBLATT,

    *Plaintiff*,

    v.

NATIONAL PORK BOARD,

    *Defendant*.

Civil No. ELH-15-00054

## MEMORANDUM OPINION

Howard Greenblatt, a former employee of the National Pork Board ("NPB"), filed suit against NPB on January 7, 2015, alleging that NPB unlawfully terminated his employment in April 2013, when he was 70 years of age, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq.* ECF 1, Complaint. The NPB, headquartered in Iowa, is a "quasi-governmental" body established pursuant to the Pork Promotion, Research, and Consumer Information Act of 1985 ("Pork Act"), 7 U.S.C. §§ 4801, *et seq. See* ECF 1 ¶ 2.

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), NPB has moved to dismiss. ECF 3 ("Motion"); ECF 3-1 ("Memo") (collectively, "Motion"). It contends that this Court lacks subject matter jurisdiction because Mr. Greenblatt "failed to satisfy the jurisdictional prerequisites to filing an ADEA claim . . . ." ECF 3 ¶ 4, Motion. NPB maintains that Mr. Greenblatt was a federal employee for purposes of filing an employment discrimination claim. *See* ECF 3-1 at 5-6, Memo. According to NPB, Mr. Greenblatt "failed to exhaust the administrative procedures . . . " through the United States Agricultural Marketing Service ("AMS") of the Department of Agriculture ("USDA"). ECF 3 ¶ 5, Motion. In particular, NPB submits that Mr. Greenblatt "failed to provide notice of his intent to sue to the [Equal

Employment Opportunity Commission ("EEOC")] within 180 days of the alleged discriminatory act and failed to exhaust the administrative procedures that applied to him as an employee of NPB." *Id.* ¶ 5.

Mr. Greenblatt opposes the Motion. ECF 14 ("Opposition"); ECF 14-1 ("Opposition Memo") (collectively "Opposition"). He appended numerous exhibits to his Opposition. ECF 14-2. Mr. Greenblatt posits that he was not a federal employee for purposes of his ADEA claim (ECF 14-1 at 5-8) and therefore he "was not required to file a complaint with the AMS." ECF 14-1 at 4. In any event, plaintiff asserts that he submitted a complaint to AMS, but AMS declined to process the complaint and instead referred him to the EEOC. *Id.* at 2. Mr. Greenblatt contends that "[h]e has exhausted his administrative remedies" (*id.* at 3) through the Iowa Civil Rights Commission ("ICRC") and the EEOC, and obtained a Notice of Right to Sue from both entities before bringing this suit. *Id.* at 2. In the alternative, Mr. Greenblatt argues that "the alleged untimely filing of the complaint or any allegedly required notice is subject to equitable tolling" because "Mr. Greenblatt relied upon the determination of the AMS in filing his complaint with the EEOC." *Id.* at 10.

NPB has replied. ECF 20 ("Reply"). It does not dispute that AMS refused to process Mr. Greenblatt's complaint. Nevertheless, NPB maintains that Mr. Greenblatt "had available to him an alternative method to bring his ADEA claim in which he could bypass the filing of an administrative complaint completely." *Id.* at 1. According to NPB, Mr. Greenblatt "had the option of filing a notice of intent to sue with the EEOC followed by a lawsuit in District Court instead of filing an administrative complaint . . . ." *Id.* at 6. NPB also maintains that the "[a]pplication of equitable tolling is inappropriate" because Mr. Greenblatt could have exercised

"the option of filing a notice of intent to sue with the EEOC followed by a lawsuit in District Court instead of filing an administrative complaint of age discrimination." *Id.*

The Motion has been fully briefed. No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I will deny NPB's Motion.

## I. Factual Background

### A. The Port Act and the NPB

The Pork Act's purpose is to "strengthen the position of the pork industry in the marketplace; and . . . maintain, develop, and expand markets for pork and pork products," 7 U.S.C. § 4801(b)(1)(A) and (B), through "the establishment of an orderly procedure for financing, through adequate assessments, and carrying out an effective and coordinated program of promotion, research, and consumer information . . . ." 7 U.S.C. § 4801(b)(1); *see* 7 C.F.R. § 1230.58(s). Pursuant to the Pork Act, 7 U.S.C. § 4803, the United States Secretary of Agriculture ("Secretary") has promulgated the Pork Promotion, Research, and Consumer Information Order ("Order") to regulate the NPB's activities. 7 C.F.R. § 1230.

The Pork Act established the National Pork Producers Delegate Body ("Delegate Body"), 7 U.S.C. § 4806, which sets and oversees the distribution of assessments. 7 C.F.R. § 1230.39. The Delegate Body consists of members nominated by state pork producers associations and appointed by the Secretary, *see* 7 C.F.R. § 1230.30(a), and pork importers appointed directly by the Secretary. 7 U.S.C. § 4806(b)(1). The Port Act also provides for the creation of a 15-member National Pork Board. 7 U.S.C. § 4808(a)(1). The Delegate Body nominates the NPB's fifteen members, who are appointed by the Secretary. *See* 7 C.F.R. §§ 1230.39(d) and 1230.50.

The Pork Act, 7 U.S.C. § 4808(b)(1), authorizes NPB to:

(A)    develop, at the initiative of the Board or other person, proposals for promotion, research, and consumer information plans and projects;

(B)      submit such plans and projects to the Secretary [of Agriculture] for approval;

(C)      administer the [O]rder, in accordance with the [O]rder and this chapter;

(D)      prescribe such rules as are necessary to carry out such [O]rder;

(E)      receive, investigate, and report to the Secretary complaints of violations of such [O]rder;

(F)      make recommendations to the Secretary with respect to amendments to such [O]rder; and

(G)      employ a staff and conduct routine business.

Under the Pork Act, the NPB's operations are subject to oversight and approval by the Secretary.  7 U.S.C. § 4808(b)(2) to (b)(4).  The Secretary has delegated responsibility to AMS for oversight of commodity promotion, research, and consumer information programs such as NBP.  In accordance with this delegation of authority, AMS has published Guidelines for AMS Oversight of Commodity Research and Promotion Programs ("AMS Guidelines").  USDA, Guidelines for AMS Oversight of Commodity Research and Promotion Programs (2012) [hereinafter AMS Guidelines], *available at* http://www.pork.org/wp-content/uploads/2014/09/ams-rp-guidelines-june-20121.pdf.[1]  Included among the provisions of the AMS Guidelines is a section entitled "Civil Rights and Equal Opportunity."  *Id.* at 21-22.  It provides that promotional boards, including NPB, are to "make employees aware of how they

_____

[1] NPB relies on the AMS Guidelines, but did not provide a copy of them.  Instead, it cited to two hyperlinks.  However, neither URL address actually linked to the AMS Guidelines.  The URL address cited in the Memo (ECF 3-1 at 4) is apparently no longer operational.  United States Department of Agriculture Agricultural Marketing Service, http://www.ams.usda.gov/%20AMSv1.0/getfiledDocName=STELPRDC5097175 (last visited Oct. 22, 2015) ("404 – Not Found . . . The content was not found").  The URL address cited in the Reply (ECF 20 at 4) links to the AMS's main website.  Department of Agriculture Agricultural Marketing Service, http://www.ams.usda.gov/?dDocName=STELPRDC5097175 (last visited Oct. 22, 2015).  Therefore, I cite to the version of the AMS Guidelines that is available on NPB's website.

may report civil rights violations to AMS or to USDA's Office of the Inspector General at (800) 424-9121." *Id.* at 22. The AMS Guidelines further provide: "AMS has responsibility to investigate and address all allegations of civil rights or equal opportunity violations, sexual harassment, violence, and other misconduct associated with the board and board staff." *Id.*

## B. Mr. Greenblatt

In 1997, Mr. Greenblatt began work at NPB as a National Foodservice Marketing Manager based in Baltimore County, Maryland. ECF 1 ¶¶ 1, 6-7, Complaint. "As National Foodservice Marketing Manager, Mr. Greenblatt was responsible for managing programs, promotions, and culinary development within the non-commercial segment of the foodservice division at [NPB]." *Id.* ¶ 8. Mr. Greenblatt describes his performance with NPB as "exemplary throughout his employment with [NPB]." *Id.* ¶ 11. He asserts: "Prior to 2011, Mr. Greenblatt did not receive any negative evaluations or disciplinary reprimands." *Id.* ¶ 12.

"In 2011, Steven Gerike . . . took over as Mr. Greenblatt's supervisor." *Id.* ¶ 13. According to plaintiff, "Mr. Gerike subjected Mr. Greenblatt to increasingly negative treatment, including poor evaluations of his performance, notwithstanding his excellent history and continued positive feedback from others in the organization." *Id.* ¶ 14. Mr. Greenblatt alleges that in July 2012, during a performance review, Mr. Gerike pressured plaintiff to retire. *See id.* ¶¶ 15-17. "In October of 2012," according to Mr. Greenblatt, "Mr. Gerike told Mr. Greenblatt that if he would retire from [NPB] at that time, Mr. Gerike could get him one year of severance pay and benefits." *Id.* ¶ 18. Mr. Greenblatt declined the offer. *Id.* ¶ 19. Mr. Greenblatt alleges that "[o]n January 29, 2013, Mr. Gerike placed Mr. Greenblatt on a performance improvement plan ('PIP')" (*id.* ¶ 20) in "an . . . attempt . . . to force Mr. Greenblatt out due to his age." *Id.* ¶ 21. Mr. Greenblatt contends that although he "substantially met the requirements of the PIP"

before the PIP's deadline of April 1, 2013 (*id.* ¶ 22), "Mr. Gerike did not acknowledge [his] compliance." *Id.* ¶ 23.

On April 10, 2013, plaintiff traveled to Rosemont, Illinois, to meet with Mr. Gerike (*id.* ¶¶ 24-25) in order "to review the PIP." *Id.* ¶ 26. Mr. Greenblatt also met with Ceci Snyder, Vice President of Domestic Marketing. *Id.* ¶ 27. According to Mr. Greenblatt, "Ms. Snyder immediately told him that his employment was terminated, and there was nothing he could say as 'the decision had already been made.'" *Id.* ¶ 28. Mr. Greenblatt maintains that "[b]oth Ms. Snyder and Mr. Gerike refused to discuss Mr. Greenblatt's satisfaction of the PIP requirements or the reason his employment was terminated." *Id.* ¶ 31. As noted, "Mr. Greenblatt was 70 years old on the date his employment was terminated." *Id.* ¶ 30. Mr. Greenblatt also alleges that his position "has been filled by a younger, less senior, less experienced and less qualified individual." *Id.* ¶ 36.

About a month later, on May 13, 2013, Mr. Greenblatt, through his lawyer, S. Luke Craven, "notified the AMS Civil Rights Program regarding an Equal Employment Opportunity . . . claim of discrimination against the . . . AMS . . . ." ECF 14-2 at 3, Letter dated May 14, 2013, from USDA EEO Specialist Charles Thomas to Craven. On May 20, 2013, EEO Specialist Charles Thomas, a case officer within the AMS Civil Rights Program, granted Mr. Greenblatt a ten-day extension to submit the documentation necessary to process Mr. Greenblatt's claim. ECF 14-2 at 6-7, email dated May 20, 2013, from Thomas to Craven. On May 29, 2013, Craven submitted the required documentation to AMS by email and by United States mail. ECF 14-2 at 9-16, Letter dated May 29, 2013, from Craven to Thomas (including accompanying attachments); ECF 14-2 at 19, email of May 29, 2013 at 10:38 AM, from Tricia Little on behalf of Craven to Thomas ("Please see the attached letter regarding [Mr. Greenblatt's] case."). It

appears that, after Thomas received Craven's submission, Thomas telephoned Craven to inform him that AMS lacked jurisdiction to process Mr. Greenblatt's complaint. ECF 14-2 at 18, email of May 29, 2013 at 1:56 PM, from Thomas to Craven (referencing "our telephone conversation"). In any event, in an email on May 29, 2013 (ECF 14-2 at 18) Thomas wrote to Craven:

> [A]lthough the National Pork Board is a quasigovernmental body of the United States and operates as part of Agriculture Marketing Services [sic] (AMS) overseen by the United States Department of Agriculture, Mr. Greenblatt was directly employed by the Nation [sic] Pork Board and *was not an employee of the United Stated [sic] Department of Agriculture*. . . . AMS Civil Rights Program process [sic] allegation of alleged discrimination filed by applicants, current employee's [sic], or former employees who were employees at the United States Department of Agriculture, therefore due to the nature that *Mr. Greenblatt was never employed at USDA the AMS Civil Rights Program can't process his complaint of alleged discrimination*. (Emphasis added.)

Thomas also said, *id.*: "I recommend contacting the [EEOC] field office in Des Moines, Iowa." And, he provided contact information for the EEOC as well as the ICRC. *Id* at 18-19.

On September 20, 2013, plaintiff, through counsel, filed complaints with the ICRC and the EEOC, alleging age discrimination. ECF 1 ¶ 40, Complaint; ECF 14 ¶ 9, Opposition; *see* ECF 14-2 at 21-26, Letter of September 20, 2013, from Craven to ICRC (including accompanying attachments). On October 9, 2013, the ICRC acknowledged receipt of Mr. Greenblatt's complaint and asked him to complete a required questionnaire. ECF 14-2 at 28, Letter of October 9, 2013, from ICRC to Greenblatt. Plaintiff, through counsel, submitted the questionnaire to the ICRC on November 8, 2013. ECF 14-2 at 32-43, Letter of November 8, 2013, from Craven to ICRC (including accompanying attachments). On May 1, 2014, the ICRC notified Mr. Greenblatt and his attorney that Mr. Greenblatt's case merited further investigation. ECF 14-2 at 45, Letter of May 1, 2014, from ICRC to Greenblatt and Craven.

The ICRC conducted an investigation and then issued a lengthy "Screening Data Analysis and Case Recommendation" ("ICRC Opinion"). ECF 14-2 at 47-56. According to the ICRC Opinion, NPB responded to Mr. Greenblatt's ICRC and EEOC complaints by asserting that "the ICRC and the EEOC does [sic] not have jurisdiction over this complaint." *Id.* at 49. The ICRC Opinion states that NPB claimed that "it is a quasi-government entity" created by the Pork Act, and "explain[ed] there is a separate process that applies to complaints filed by employees in the federal sector." *Id.* According to the ICRC Opinion, NPB also claimed that Mr. Greenblatt "did not file with AMS or USDA as was required." *Id.* However, the ICRC concluded that "[i]nformation provided by [Mr. Greenblatt] shows he attempted to file with AMS but was told by AMS to file the complaint with the EEOC or ICRC . . . ." *Id.* at 52. The ICRC Opinion also recounted that the EEOC asked AMS to clarify whether it would process Mr. Greenblatt's complaint. *Id.* According to the ICRC Opinion, an EEOC representative spoke with Thomas, the AMS case officer who had initially declined to process Mr. Greenblatt's complaint, as well as to Thomas's supervisor. *Id.* "They explained that AMS only has jurisdiction over those complaints filed by [NPB's] board members. They do not have jurisdiction over the complaints filed by [NPB's] employees." *Id.* On that basis, the ICRC and the EEOC concluded that "it appears [that Mr. Greenblatt's] complaint falls under the jurisdiction of the ICRC and EEOC." *Id.*; *see* ECF 14-2 at 60, EEOC Notice of Right to Sue.

On September 4, 2014, the ICRC issued a Notice of Right to Sue. ECF 14-2 at 58, Right-To-Sue Letter. On October 28, 2014, the EEOC also issued a Notice of Right to Sue. ECF 14-2 at 60, EEOC Notice of Right to Sue. As noted, Mr. Greenblatt brought suit in this court on January 7, 2015. ECF 1, Complaint.

Additional facts are included in the Discussion.

## II. Standard of Review

Defendant's Motion is premised in part on Fed. R. Civ. P. 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction. A challenge to subject matter jurisdiction under Rule 12(b)(1) may proceed "in one of two ways": either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "'that the jurisdictional allegations of the complaint [are] not true,'" or that other facts outside the four corners of the complaint preclude the exercise of subject matter jurisdiction. *Kerns v. United States,* 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted); *accord Durden v. United States,* 736 F.3d 296, 300 (4th Cir. 2013).

NPB has brought a factual challenge, because it argues that Mr. Greenblatt did not exhaust the appropriate administrative process before bringing suit. ECF 3-1 at 1-2, Memo. In other words, NPB alleges that facts not included in the Complaint, preclude jurisdiction.

"When . . . a defendant challenges the existence of subject matter jurisdiction in fact, the plaintiff bears the burden of proving the truth of such facts by a preponderance of the evidence." *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009); *see also Warren v. Sessoms & Rogers, P.A.,* 676 F.3d 365, 371 (4th Cir. 2012); *Evans v. B.F. Perkins Co.,* 166 F.3d 642, 647 (4th Cir. 1999). In ruling on a motion under Rule 12(b)(1), the court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans,* 166 F.3d at 647 (citation and quotation marks omitted). The court should grant the motion "'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of

law.'" *Id.* (quoting *Richmond, Fredericksburg, & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991), *cert. denied,* 503 U.S. 984 (1992)).

Defendant's Motion is also premised on Fed. R. Civ. P. 12(b)(6), which governs motions to dismiss for failure to state a claim upon which relief can be granted. ECF 3-1 at 1-2, Memo. A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted." In considering a Rule 12(b)(6) motion, the court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 440 (4th Cir. 2011) (citations and quotation marks omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak,* 650 F.3d 515, 522 (4th Cir. 2011) (stating courts must construe the facts "in the light most favorable to the nonmoving party"), *cert. denied,* ⸺ U.S. ⸺, 132 S. Ct. 402 (2011).

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). It provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendant with "fair notice" of the claim and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotation marks omitted). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Id.* Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, ⸺ U.S. ⸺, 135 S. Ct. 346, 346 (2014) (per curiam).

To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted). In other words, the complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Id.* at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009); *Epps v. JP Morgan Chase Bank, N.A.*, 675 F.3d 315, 320 (4th Cir. 2012); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011). Rule 8(a)(2) demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient. *Twombly*, 550 U.S. at 555.

"A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), *cert. denied*, ––– U.S. ––––, 132 S. Ct. 1960 (2012). The court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events. *See, e.g., Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009); *see also United Black Firefighters v. Hirst,* 604 F.2d 844, 847 (4th Cir. 1979). Nor must it accept legal conclusions couched as factual allegations, *Iqbal,* 556 U.S. at 678, or "'legal conclusions drawn from the facts . . . .'" *Monroe v. City of Charlottesville,* 579 F.3d 380, 385–86 (4th Cir. 2009) (citation omitted).

Ordinarily, in resolving a motion under Rule 12(b)(6), a court may not consider materials extrinsic to the complaint. *Braun v. Maynard*, 652 F.3d 557, 559 n.1 (4th Cir. 2011). But, a court *may* properly "consider documents attached to the complaint as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted); *see also Anand v. Ocwen Loan Servicing, LLC,* 754 F.3d 195, 198 (4th Cir. 2014); *E.I. du Pont de Nemours & Co.,* 637 F.3d at 448. To be "integral," a document must be one "that by its 'very existence, and *not the mere information it contains,* gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC,* 794 F. Supp. 2d 602, 611 (D. Md. 2011) (emphasis in original) (citation omitted); *see also New Beckley Mining Corp. v. UMWA,* 18 F.3d 1161, 1164 (4th Cir. 1994) (holding that the district court did not err in relying on a document that plaintiff referred to in its complaint to justify a cause of action).

### III. Discussion

### A. ADEA

"The ADEA makes it 'unlawful for an employer . . . to discharge any individual . . . because of such individual's age.'" *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (quoting 29 U.S.C.A. § 623(a)(1)). The ADEA "creates a cause of action for certain[] federal employees over the age of 40 who allege discrimination on the basis of age." *Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (en banc) (citing 29 U.S.C. § 633a); *see also Baqir v. Principi*, 434 F.3d 733, 744 (4th Cir. 2006). Employees in the private sector, who are not covered by 29 U.S.C. § 633a, must exhaust an administrative process governed by 29 U.S.C. § 623. *Id.*

Under Title VII, a plaintiff's failure to exhaust administrative remedies is a jurisdictional bar to suit in this Court. Generally, exhaustion applies to the ADEA. In *Jones*, 551 F.3d at 300–01, the Court said: "Importantly, a failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim. *The same is true of claims made under the ADEA. See* 29 U.S.C.A. § 626(d) . . . ." (internal citation and footnote omitted) (emphasis added). Notably, the "administrative remedies available for federal employees are significantly broader than the administrative remedies for employees in the private sector." *Laber*, 438 F.3d at 416.

Pursuant to 29 U.S.C. § 633a, "the ADEA provides two alternative routes for pursuing a claim of age discrimination." *Stevens v. Dep't of Treasury*, 500 U.S. 1, 5 (1991). First, "[a]n individual may invoke the EEOC's administrative process and then file a civil action in federal district court if he is not satisfied with his administrative remedies." *Id.* at 5-6 (citing 29 U.S.C. § 633a(b) and (c)). Judge Blake explained in *Verrier v. Sebelius*, CCB-09-402, 2010 WL 1222740, at *8 (D. Md. Mar. 23, 2010):

> Pursuant to regulation, federal employees "who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a[n EEO] Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). And they "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1).

If the issue is not resolved with the aid of the counselor, the aggrieved person must file a formal complaint with the agency. *See* 29 C.F.R. §§ 1614.106 to 1614.108. Once the agency takes "final action" on the formal complaint, the aggrieved person may appeal the decision to the EEOC or file suit. *Id.* § 1614.110.

Second, and in the alternative, "Federal employees complaining of age discrimination [under the ADEA] do 'not have to seek relief from [their] employing agency on the EEOC at

all.'" *Verrier*, 2010 WL 1222740, at *8 (citation omitted). Rather, "[a] federal employee complaining of age discrimination . . . can decide to present the merits of his claim to a federal court in the first instance." *Stevens*, 500 U.S. at 6 (citing 29 U.S.C § 633a(d)). However, 29 U.S.C § 633a(d) provides:

> When the individual has not filed a complaint concerning age discrimination with the [EEOC], no civil action may be commenced by any individual under this section until the individual has given the [EEOC] not less than thirty days' notice of an intent to file such action. Such notice shall be filed within one hundred and eighty days after the alleged unlawful practice occurred.

An employee covered by 29 U.S.C. § 623 must exhaust a different administrative procedure before filing suit in federal court. The Fourth Circuit explained in *Jones*, 551 F.3d at 300-01:

> Before a plaintiff may file suit under Title VII or the ADEA, he is required to file a charge of discrimination with the EEOC. *See* 42 U.S.C.A. § 2000e-5(f)(1) (West 2003) (Title VII); 29 U.S.C.A. § 626(d) (West 1999) (ADEA). Title VII establishes two possible limitation periods for filing a discrimination charge with the EEOC. *See* 42 U.S.C.A. § 2000e-5(e)(1). "The basic limitations period is 180 days after the alleged unlawful employment practice. However, the limitations period is extended to 300 days when state law proscribes the alleged employment practice and the charge has initially been filed with a state deferral agency." *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998). The same limitation periods apply regarding ADEA claims. *See* 29 U.S.C.A. § 626(d).

Upon receipt of a Notice of Right to Sue from the EEOC, an aggrieved employee must file suit within 90 days. 29 U.S.C. § 626(e).

### B. Exhaustion

The parties dispute whether Mr. Greenblatt exhausted the appropriate administrative complaint process and thus whether Mr. Greenblatt has satisfied the jurisdictional prerequisites to filing an ADEA claim in federal court. In other words, the question is whether § 633a, applicable to federal employees, applied to plaintiff.

Section 633a applies, in relevant part, to "[a]ll personnel actions affecting employees . . . who are at least 40 years of age . . . in executive agencies defined in section 105 of Title 5 (including employees . . . who are paid from nonappropriated funds) . . . ." Pursuant to 5 U.S.C. § 105, "'Executive agency' means an Executive department, a Government corporation, and an independent establishment." Title 5 U.S.C. § 101 provides an exhaustive list of "executive departments," which includes the USDA, but not the NPB. Title 5 U.S.C. § 103 states, in relevant part: "'Government corporation' means a corporation owned or controlled by the Government of the United States . . . ." Title 5 U.S.C. § 104 provides, in relevant part, that "'independent establishment' means . . . an establishment in the executive branch (other than the United States Postal Service or the Postal Regulatory Commission) which is not an Executive department, military department, Government corporation, or part thereof, or part of an independent establishment . . . ." Notably, "[e]ach agency . . . adopt[s] procedures for processing individual and class complaints of discrimination . . . ." 29 C.F.R. § 1614.104(a).

In its Motion, NPB maintains that, as a former NPB staff member, plaintiff was, in effect, a federal employee of an "executive agency" for purposes of filing his age discrimination claim, and therefore he should have exhausted the complaint process through AMS before commencing suit in federal court. *See* ECF 3-1 at 5, Memo. Mr. Greenblatt counters that, as a NPB staff member, he was not an employee of an "executive agency" for purposes of filing his age discrimination claim, and therefore he exhausted the correct administrative complaint process through the ICRC and EEOC—a process through which, Mr. Greenblatt emphasizes, AMS directed him to proceed. *See* ECF 14-1 at 7-8, Opposition Memo.

The parties acknowledge that there appears to be no case law addressing whether NPB staff members are considered federal employees for purposes of filing employment

discrimination claims. *See* ECF 14-1 at 6, Opposition Memo; ECF 20 at 2-3, Reply. Whether NPB staff members should be treated as federal employees for purposes of filing employment discrimination claims appears to be a question of first impression.

Mr. Greenblatt advances substantially two arguments to support his contention that he was not a federal government employee for purposes of filing an employment discrimination complaint. First, Mr. Greenblatt contends that it would be "illogical" to treat him as an employee of an "executive agency" for purposes of exhausting the USDA's administrative complaint procedure when AMS refused to process his complaint. ECF 14-1 at 10, Opposition Memo. As discussed, *supra*, the exhibits that Mr. Greenblatt appended to his Opposition show that AMS, the organization within USDA that NPB maintains is the appropriate administrative agency to have processed Mr. Greenblatt's complaint, *see* ECF 3-1 at 5, Memo, twice refused to do so. *See* ECF 14-2 at 18, email dated May 29, 2013, from Thomas to Craven; ECF 14-2 at 52, ICRC Opinion.

To be sure, it is undisputed that in May 2013 AMS declined to process plaintiff's complaint, although plaintiff's lawyer provided AMS with documentation that AMS had requested. *See* ECF 14-2 at 18, email dated May 29, 2013, from Thomas to Craven. Instead, AMS directed Mr. Greenblatt to the ICRC and the EEOC. *Id.* According to the ICRC Opinion, the EEOC contacted AMS "to determine the proper agency to handle the processing of [Mr. Greenblatt's] complaint." ECF 14-2 at 52, ICRC Opinion. The ICRC Opinion reported that both the AMS case officer (Thomas) and his supervisor said that AMS could not process Mr. Greenblatt's claim because Mr. Greenblatt was an NPB staff member. *Id*. Therefore, Mr. Greenblatt maintains that the USDA's repeated refusal to process his claim demonstrates that he

was not a federal employee for purposes of filing an employment discrimination claim. *See* ECF 14-1 at 7 n.3, Opposition Memo.

As indicated, NPB does not contest that AMS refused to process Mr. Greenblatt's original complaint and instead directed Mr. Greenblatt to the ICRC and the EEOC. *See* ECF 20 at 2, Reply. Nor does NPB dispute that AMS later represented to the EEOC that AMS had no authority to process Mr. Greenblatt's complaint. *See id.*

Second, Mr. Greenblatt contends that he should not be treated as a federal employee because "[NPB] is neither an executive department, a government corporation, nor is it an independent establishment" pursuant to 5 U.S.C. § 105. ECF 14-1 at 7, Opposition Memo. He maintains that "the fact that Mr. Greenblatt *was not* a federal employee is supported by statute, regulation, and the interpretation of those statutes and regulation by the AMS – the very entity upon which Defendant's argument relies." ECF 14-1 at 8, Opposition Memo (emphasis in original). In support of plaintiff's contention that NPB's staff members are not employees of an "executive agency" for purposes of filing discrimination claims, Mr. Greenblatt relies heavily on the analysis in *Haddon v. Walters*, 43 F.3d 1488 (D.C. Cir. 1995) (per curiam). *See* Opposition Memo, ECF 14-1 at 6-7.

In *Haddon*, 43 F.3d 1488, a former White House chef brought a Title VII employment discrimination suit, alleging that the Executive Residence (*i.e.*, the White House) violated Title VII, as amended. *Id.* at 1489. The D.C. Circuit affirmed the dismissal of the complaint. *Id.* at 1491.

The *Haddon* Court analyzed whether the plaintiff was covered under 42 U.S.C. § 2000e-16, and noted that the answer "turn[ed] on whether the Executive Residence is an 'executive agency'" within the meaning of 5 U.S.C. § 105. *Id.* The D.C. Circuit reasoned: "The Executive

Residence is not included in Title 5's exclusive list of Executive departments." *Id.* at 1490 (citing 5 U.S.C. § 101). It also observed that the White House is not a "government corporation" as defined in 5 U.S.C. § 103. *Haddon*, 43 F.3d at 1490. Turning to the final category of "executive agency" under 5 U.S.C. § 105—an "independent establishment"—the *Haddon* Court concluded, based on analysis of related statutes, that Congress intended the White House and its staff to be distinct from "independent establishments" of the Executive Branch. 43 F.3d 1490.

Mr. Greenblatt maintains, ECF 14-1 at 7, Opposition:

> Similar to the case in *Haddon*, [NPB] is not included as an "Executive Department" under 5 U.S.C. § 101. Moreover, there is nothing establishing [NPB] as a government corporation under 5 U.S.C. § 103. The fact that an organization was created in response to an act passed by Congress does not mean that all employees of that organization qualify as federal employees as defined by 29 U.S.C. § 633a and 5 U.S.C. § 105.

NPB advances three primary arguments to support its contention that "allegations of discrimination by NPB employees or former employees fall within the purview of the USDA . . . in the first instance." ECF 3-1 at 5, Motion.

First, NPB contends: "The Secretary has delegated responsibility for oversight of commodity promotion, research, and consumer information programs such as NPB to . . . AMS . . . ." *Id.* at 4. NPB also notes: "AMS has published [the AMS Guidelines]," which provide "that AMS has 'responsibility to investigate and address all allegations of civil rights or equal opportunity violations, sexual harassment, violence, and other misconduct associated with the board and board staff.'" *Id* (quoting AMS Guidelines at 22).

Second, NPB submits that NPB should be considered an "executive agency" under 5 U.S.C. § 105 because (1) "The Pork Act provides for the establishment of NPB by the Secretary of Agriculture, the leader of the USDA, which is one of the executive departments listed in 5 U.S.C. § 101," ECF 20 at 3, Reply, and (2) "the Pork Act provides that NPB is subject to

oversight by the USDA." *Id.* Therefore, it reasons, *id.*: "NPB is more properly covered by the provisions of 29 U.S.C. § 633a than the provisions of 29 U.S.C. § 623 . . . ."

Third, NPB argues that other federal agencies treat NPB staff members as federal employees for purposes of employment benefits, and therefore NPB staff members should be treated as federal employees for purposes of submitting age discrimination claims. *See id.* NPB cites a 1992 Department of Labor ruling that "determined that employees of research and promotion boards such as NPB, which are under USDA's supervision, perform 'Federal Service' for Unemployment Compensation for Federal Employees . . . Program purposes." *Id.* (quoting U.S. Department of Labor, UCFE Program Coverage Ruling No. 92-1 (March 24, 1992), *available at* http://wdr.doleta.gov/directives/attach/UIPL/uipl1992/uipl_2392a.cfm (last visited Oct. 16, 2015) (identifying NPB as an "instrumentality of the United States" and concluding that its employees perform "federal service" for purposes of 5 U.S.C. § 8501(1))).

NPB relies on the AMS Guidelines to suggest that NPB staff members should exhaust an administrative complaint process through AMS. ECF 3-1 at 4, Memo; ECF 20 at 4, Reply. As NPB notes (ECF 3-1 at 5, Memo), the AMS Guidelines provide, in relevant part: "AMS has responsibility to investigate and address all allegations of civil rights or equal opportunity violations, sexual harassment, violence, and other misconduct associated with the board and board staff." AMS Guidelines at 22. Yet, the AMS Guidelines "are not meant to cover all aspects of AMS' day-to-day responsibilities in interacting with and supporting activities of the [research and promotion] boards." *Id.* at 2.

Based on Mr. Greenblatt's unrefuted evidence that AMS twice refused to process his claim and referred him to the ICRC and the EEOC, it appears that AMS does not provide an administrative process that NPB staff members can exhaust for employment discrimination

complaints. NPB did not submit evidence that AMS actually processes employment discrimination complaints from NPB staff members or that AMS believes that its staff refused to process Mr. Greenblatt's complaint in error. Instead, it resorts to general language in a document that "provide[s] information on how AMS approaches oversight" of research and promotion boards. ECF 3-1 at 4, Memo.

NPB also argues that it should be considered an "executive agency" pursuant to 5 U.S.C. § 105 because NPB is overseen by the Secretary, who is the head of the USDA, which is an "executive department" pursuant to 5 U.S.C. § 101. ECF 20 at 3, Reply. NPB cites no case law to support this expansive statutory interpretation. Moreover, such a broad interpretation of 5 U.S.C. § 101 contradicts the narrow approach that the D.C. Circuit adopted in *Haddon*, 43 F.3d at 1490 ("The Executive Residence is not included in Title 5's exclusive list of Executive departments. 5 U.S.C. § 101 . . . ."), an authority with which NPB does not engage. I am therefore unpersuaded that NPB should ride into the category of "executive department" on the Secretary's coat-tails.

Finally, NPB submits that because the Department of Labor treats NPB staff members as federal employees for purposes of unemployment compensation, NPB staff members should also be treated as federal employees for purposes of submitting employment discrimination claims. However, NPB cites no case law to indicate why the Court should apply another agency's administrative determination to a different statute. Moreover, even assuming that evidence of how other federal agencies classify NPB staff members is relevant to the Court's analysis, it is insufficient to overcome undisputed evidence that AMS refused to process Mr. Greenblatt's complaint.

At this juncture, based on the parties' limited submissions, I am satisfied that Mr. Greenblatt has sustained his burden to demonstrate by a preponderance of the evidence that he exhausted the appropriate administrative process before filing this suit and thus that this Court has subject matter jurisdiction.

Specifically, Mr. Greenblatt introduced evidence that AMS repeatedly refused to process his complaint because it believed that it lacked the authority to do so. Indeed, AMS directed plaintiff to pursue an administrative complaint process through the ICRC and EEOC. And, according to the ICRC, in response to an inquiry from the EEOC, an AMS case officer and his supervisor again maintained that AMS lacked jurisdiction to process Mr. Greenblatt's complaint. Moreover, Mr. Greenblatt proffers a colorable argument, based on case law, that NPB does not constitute an "executive agency" pursuant to 5 U.S.C. § 105 and that NPB's staff members are not required to pursue employment discrimination claims through AMS.

NPB did not introduce any evidence to contravene plaintiff's assertions. For example, it has not provided an affidavit from a representative of AMS, indicating that it does, in fact, process ADEA claims of NPB staff. Aside from unemployment compensation benefits available to plaintiff, NPB has not shown any indicia consistent with its claim that plaintiff was a federal employee.

### III. Conclusion

As noted, pursuant to 29 U.S.C. § 623, with exceptions not applicable here, an aggrieved employee must file a complaint with the EEOC within 180 days from the date of the alleged violation. *Jones*, 551 F.3d at 300-01. Upon receiving a Notice of Right to Sue, the aggrieved employee must bring suit within 90 days. 29 U.S.C. § 626(e). Mr. Greenblatt alleges that NPB terminated him on April 10, 2013. ECF 1 ¶ 29, Complaint. Mr. Greenblatt's counsel filed

claims with the ICRC and EEOC within 180 days, *i.e.*, on September 20, 2013. ECF 14-2 at 21-26, Letter of September 20, 2013, from Craven to ICRC (and accompanying exhibits). The ICRC and EEOC issued Mr. Greenblatt Notices of Right to Sue on September 4, 2014, and October 28, 2014, respectively. ECF 14-2 at 58, Right-to-Sue Letter. ECF 14-2 at 60, EEOC Notice of Right to Sue. Mr. Greenblatt filed suit within 90 days of receiving the EEOC's Notice of Right to Sue, *i.e.*, on January 7, 2015. ECF 1, Complaint. Pursuant to 29 U.S.C. § 623, Mr. Greenblatt timely exhausted his administrative remedies before bringing this case.[2]

For the foregoing reasons, I will deny NPB's Motion to Dismiss.

A separate Order follows, consistent with this Memorandum Opinion.


Date:  October 27, 2015                      _____/s/_____
                                             Ellen L. Hollander
                                             United States District Judge

---

[2] As indicated earlier, Mr. Greenblatt argues that "the alleged untimely filing of the complaint or any allegedly required notice is subject to equitable tolling" because "Mr. Greenblatt relied upon the determination of the AMS in filing his complaint with the EEOC." ECF 14-1 at 10, Opposition. In light of my conclusions as to other arguments advanced by Mr. Greenblatt, I need not reach this issue.